## CHARLES L. FLINT v. THE BOARD OF COMMISSIONERS OF JACKSON COUNTY.

SCHOOL LAND — *Forfeiture — Void Tax Sale — Refunding.* School land sold in 1869 to be paid for in ten annual installments, followed by default in 1873, became at once *ipso facto* forfeited to the state, and a sale thereof for taxes in 1874 was void; and when the illegality of such sale was ascertained, the purchaser at said tax sale had a right to have such purchase-money and taxes paid subsequently, but before ascertaining the invalidity of such sale, refunded with interest thereon.

*Error from Jackson District Court.*

THE material facts are stated in the opinion. Judgment for the defendant *County Board*, at the June term, 1887. The plaintiff *Flint* brings the case here.

*Fabius M. Clarke*, and *James H. Lowell*, for plaintiff in error.

*R. G. Robinson*, county attorney, for defendant in error.

Opinion by STRANG, C.: November 10, 1869, L. P. Hubbard purchased from the state the northwest quarter of section 36, township 6, range 13, Jackson county, Kansas, to be paid for in ten annual payments, and made three annual payments therefor, after which he ceased to meet the payments, and was in default from November 10, 1873. After sold to Hubbard the land was assessed for taxation, and the tax of 1873 not having been paid, the land was sold in May, 1874, for the taxes of 1873, and the plaintiff became the owner of the tax-sale certificate. The plaintiff paid the taxes on said land for 1874, 1875, 1876, 1877, in addition to the taxes of 1873 paid by purchase of the tax-sale certificate. In 1878 he failed to pay the taxes, and in 1879 the land was again sold for taxes, and the plaintiff again became the purchaser of the tax-sale certificate. After this it was discovered that the land was the property of the state during all the time the plaintiff had been paying taxes thereon, and was not therefore properly taxable, and the plaintiff got no title at the several tax sales. He then presented a bill of the taxes paid by him, with interest thereon, to the board of county commissioners, and asked them to refund him the amount thereof, under § 146, tax law, Compiled Laws of 1885, tendering a quitclaim deed at the same time for the land. The commissioners refused to return the money to plaintiff, and from their judgment of refusal he appealed to the district court, where the case was tried and a judgment rendered in his favor for the sum of $22.55, with interest from September 2, 1879, at ten per cent., and the further sum of $2.45, and interest at ten per cent. from June 11, 1883, being the amount of taxes for 1878 with interest, and the costs of tax deed made June 11, 1883, and interest on same, but refusing to allow the plaintiff anything for the taxes of 1873, 1874, 1875, 1876, and 1877. From such judgment the plaintiff, who was plaintiff below, comes here seeking to have the judgment of the court below reversed, and alleges as error that the court erred under the pleadings and evidence in not

42 — 43 KAS.

giving him judgment for the taxes of 1873, 1874, 1875, 1876, and 1877, and interest thereon.

We think the plaintiff is right in his contention. He paid such taxes under the mistaken belief that he acquired some interest in said land by his purchase at tax sale in 1874; and when it was discovered that he got nothing under said sale, §146, above mentioned, authorized and required the board of county commissioners to refund to him the money paid, with interest thereon. The defendant alleges that the plaintiff should not recover the money back because by his purchase at the tax sale he became subrogated to the rights of Hubbard, and, as a consequence, could have paid the amount unpaid on Hubbard's certificate of purchase, and demanded a patent for the land; and not having done so, and thus protected himself, he cannot ask the taxes refunded to him, and cites §14, chapter 94, General Statutes of 1868, and other authorities. We do not think the section applies. Hubbard made default in November, 1873; his entire interest in the land was immediately forfeited. The title to the land, at once, by operation of law, again became vested in the state. (Gen. Stat. 1868, ch. 94, §16; *The State v. Emmert*, 19 Kas. 546.) That being the case, there were no existing rights in Hubbard in relation to said land to which the plaintiff could be subrogated. If Hubbard had not defaulted in his payments to the state, but had failed to pay the taxes on the land, and the land had been sold for taxes, and the plaintiff had become the purchaser at the tax sale, then the plaintiff would have been subrogated to the rights of Hubbard, and under §14, chapter 94, General Statutes of 1868, the plaintiff, subject to the conditions of the original certificate of purchase and the bond of said purchaser, could have completed the payments of the original purchaser and demanded a patent. In such case there would be no question of forfeiture, and §14, above referred to, never contemplated any forfeiture. That section simply provides against waste, for the taxation of the land when sold, and for the sale of the land for taxes; and then pro-

vides for the protection of the state, in case the land is sold for taxes, by declaring that the purchaser at tax sale shall be subject to the conditions of the original certificate of sale and purchase, and the bond given by the purchaser in connection with the purchase. It will be seen that none of these provisions are for the protection of the purchaser at tax sale, but solely for the protection of the state. It may be conceded, however, that under the law in relation to tax sales, the purchaser at such a tax sale gets all the interest and is subrogated to all the rights of the original purchaser. When, however, as in this case, the original purchaser has made default, and the land, with all his rights thereto, is forfeited under § 16 of said chapter 94, General Statutes of 1868, and a tax sale of said land occurs afterward, there is nothing left in the original purchaser for the tax-sale purchaser to succeed to, and nothing upon which he can base a right to pay out on the original sale certificate and demand a patent. The land is absolutely forfeited to the state, and the state has a right, and it is its duty, to appraise and sell it anew.

We have examined the position of the defendant in relation to a waiver on the part of the state of the forfeiture of the land by Hubbard, and the cases cited in support of such position. We do not think there was a waiver in this case; nor do we think there is anything in the cases cited that supports the theory of waiver claimed in this case. Hubbard purchased in 1869. He defaulted in his payments November, 1873. Such default, by force of the statute, ipso facto worked a forfeiture of the land, and the statute does not authorize a waiver. The land then belonged to the state from that time on until reappraised and sold. Being the land of the state, the tax for which it was sold in 1884 was illegal, and the sale thereon invalid. The plaintiff should have the purchase-money at such tax sale refunded; and having paid the taxes for 1874, 1875, 1876, and 1877 upon the strength of the said sale and tax-sale certificate thus obtained, those taxes should also be refunded to him.

We therefore recommend that the case be remanded to the

trial court, with instructions to modify the judgment for the plaintiff by adding thereto the amount paid by plaintiff on the tax sale of 1874, and interest thereon; the cost of the tax deed of 1877, and interest thereon; and the amount of the taxes paid in 1874, 1875, 1876, and 1877.

By the Court: It is so ordered.

All the Justices concurring.